19 P.3d 635

Theresa **CARRASCO**, individually and as Personal Representative of the Estate of Sky Andres Carrasco, deceased, Plaintiff/Appellant,

v.

The **STATE** of Arizona; **Child Protective Services,** a division of the Arizona Department of Economic Security, Defendants/Appellees.

No. 2 CA–CV 00–0191.

Court of Appeals of Arizona, Division 2, Department A.

March 8, 2001.

Law Office of Carter Morey by Carter Morey and Amanda L. Trefethen, Tucson, for plaintiff-appellant.

Janet Napolitano, Arizona Attorney General, by Kristin A. Green and Bruce L. Skolnik, Tucson, for defendants-appellees.

## OPINION

HOWARD, Presiding Judge.

¶ 1 The trial court awarded summary judgment in favor of appellees State of Arizona and Child Protective Services (CPS) in a wrongful death action brought by appellant Theresa Carrasco, personal representative of decedent Sky Andres Carrasco. Theresa argues the trial court erred in finding that because Sky's mother, a statutory beneficiary under A.R.S. § 12–612(A), survived him, Theresa was not authorized to recover on behalf of Sky's estate. Because we agree with the trial court that the estate is not an authorized beneficiary, we affirm.

## BACKGROUND

¶ 2 In reviewing the grant of summary judgment, we view the facts and reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was entered. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, ¶ 12 (App.1998). And we independently determine whether there are any genuine issues of material fact and whether the court properly applied the law. *Toy v. Katz*, 192 Ariz. 73, 85, 961 P.2d 1021, 1033 (App.1997).

¶ 3 On June 1, 1997, three-month-old Sky Carrasco was pronounced dead of unknown causes. His mother, Nancy, was charged with intentional child abuse under circumstances likely to produce death or serious physical injury and first-degree murder. Nancy pled guilty to the lesser charge of criminally negligent child abuse under circumstances likely to produce death or serious physical injury based on her failure to obtain prompt medical care for Sky. Theresa Carrasco, Sky's grandmother, was appointed personal representative of Sky's estate. She sued CPS on behalf of the estate and individually for Sky's wrongful death, alleging CPS had received a number of complaints from persons concerned about Sky's safety, but had taken no action to remove Sky from Nancy's home. Theresa did not seek any damages on behalf of Nancy.

¶ 4 CPS moved for summary judgment relying on *Bowslaugh v. Bowslaugh,* 126 Ariz. 517, 617 P.2d 25 (1979), for the proposition that the estate could not recover other damages because Nancy, a named statutory wrongful death beneficiary, had survived Sky. Theresa responded by claiming that Nancy was not a surviving beneficiary because her criminal responsibility for Sky's death severed her parental rights, and the slayer statute, A.R.S. § 14–2803, required that the court treat Nancy as though she had predeceased Sky for purposes of the wrongful death action. Theresa also claimed that changes in legal doctrines had eroded the authoritative weight of *Bowslaugh.*

¶ 5 The trial court concluded that Nancy remained a surviving parent and an eligible wrongful death beneficiary. And, the trial court, assuming that the slayer statute applied, concluded Theresa had failed to come forward with sufficient facts indicating that Nancy had feloniously and intentionally killed Sky, which the slayer statute requires for disqualification. The trial court, therefore, granted summary judgment in favor of CPS and this appeal followed.

## DISCUSSION

¶ 6 Section 12–612(A)[1] designates the only proper beneficiaries of a wrongful death action:

An action for wrongful death shall be brought by and in the name of the surviving husband or wife or personal representative of the deceased person *for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate.*

(Emphasis added.) Our supreme court has interpreted the phrase "if none of these survive" to mean that " '[t]he estate ... is a beneficiary only if none of those named beneficiaries survive[s].' " *Bowslaugh,* 126 Ariz. at 518, 617 P.2d at 26, *quoting Solomon v. Harman,* 107 Ariz. 426, 430, 489 P.2d 236, 240 (1971). *See also Knauss v. DND Neff-*

*son Co.,* 192 Ariz. 192, 199–200, 963 P.2d 271, 278–79 (App.1997). Here, it is undisputed that Sky's parent, Nancy, survived him and is the person designated by § 12–612(A) as entitled to receive wrongful death damages.[2] Sky estate, therefore, is not entitled to recover its damages. *Bowslaugh.*

¶ 7 Theresa argues, however, that Nancy's parental rights were severed by implication because she was responsible for Sky's death. She has cited no authority for this proposition and we are aware of none. We therefore reject this argument. *Brown v. U.S. Fidelity & Guar. Co.,* 194 Ariz. 85, ¶ 50, 977 P.2d 807, ¶ 50 (App.1998) (arguments not supported by authority rejected). *See also* Ariz.R .Civ.App.P. 13(a)(6), 17B A.R.S.

¶ 8 Theresa also argues subsections A, D, and E of the slayer statute, § 14–2803, disqualify, Nancy and, therefore, allow Theresa to sue on behalf of the estate. The statute provides in pertinent part:

A. A person who feloniously and intentionally kills the decedent forfeits all benefits under this chapter with respect to the decedent's estate, including an intestate share, an elective share, an omitted spouse's or child's share, a homestead allowance, exempt property and a family allowance....

. . . .

D. Provisions of a governing instrument are given effect as if the killer disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the killer predeceased the decedent.

E. A wrongful acquisition of property or interest by a killer not covered by this section shall be treated in accordance with the principle that a killer cannot profit from that person's wrong.

¶ 9 Subsection A applies only to "benefits under this chapter," which is chapter two of

---

1. In 2000, the legislature amended § 12–612(A) to include surviving children, parents, and guardians as proper wrongful death plaintiffs but did not change the beneficiary provisions. 2000 Ariz.Sess.Laws, ch. 182, § 1.

2. CPS has not argued that Sky's surviving unknown father prevents the estate from recovering wrongful death damages, and we do not address the issue.

the probate code governing wills and intestate succession. *See also In re Estates of Spear,* 173 Ariz. 565, 568, 845 P.2d 491, 494 (App.1992). That chapter does not provide for wrongful death actions. Thus, wrongful death actions are not affected by subsection A. Similarly, subsection D only applies to provisions in a "governing instrument," which is defined as "a governing instrument executed by the decedent." § 14–2803(K)(2). No governing instrument is involved in this case and, therefore, subsection D does not apply.

¶ 10 Subsection E, however, is not limited by its terms to a "wrongful acquisition" under the probate code, and we will assume, without deciding, that it could apply to a wrongful death action. Although the term "killer" is not specifically defined, § 14–2803(F) refers to a killer as a person "criminally accountable for the felonious and intentional killing of the decedent." Thus, for Nancy to be considered Sky's killer under subsection E, Theresa was required to show a genuine issue of material fact existed as to whether Nancy feloniously and intentionally killed Sky.

¶ 11 Theresa contends she has raised a factual issue regarding whether Nancy feloniously and intentionally killed Sky because Nancy's "indictment … for First Degree Murder, along with her conviction [for criminally negligent child abuse] relating to the death of her son, constitute sufficient evidence that it is more likely than not that [she] possessed the requisite intent for First Degree Murder." This contention fails for several reasons. First, the first-degree murder charge was dismissed. And, although a criminal conviction for feloniously and intentionally killing the decedent establishes the

criminal defendant as the killer for purposes of the slayer statute, § 14–2803(F), Theresa has cited no authority that the mere indictment for first-degree murder, later dismissed, is sufficient, without more, to carry her burden. *See Orme School v. Reeves,* 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990) (party with burden at trial must produce evidence creating question of fact); *compare In re Estate of Hoover,* 140 Ariz. 464, 465, 682 P.2d 469, 470 (App.1984) (alleged slayer's indictment for first-degree murder did not establish felonious and intentional killing when slayer pled guilty to manslaughter).

¶ 12 Second, Nancy was convicted of criminally negligent child abuse under circumstances likely to produce death or serious physical injury. A.R.S. § 13–3623(A)(3). A person commits child abuse by causing or permitting physical injury to a child or allowing the child to be endangered.[3] Nancy committed the offense with "criminal negligence" which is defined as failing "to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists" in gross deviation from the standard of care of a reasonable person. A.R.S. § 13–105(9)(d). This conviction does not prove nor even imply an intentional killing. *See Hoover,* 140 Ariz. at 464, 682 P.2d at 469 (reckless manslaughter conviction does not conclusively establish felonious and intentional killing). Rather, as the trial court noted "[t]hat conviction … necessarily implies the lack of a specific intent to kill [Sky]."

¶ 13 Third, Theresa did not present any other evidence indicating the circumstances of Sky's death and Nancy's involvement in it. Theresa, therefore, has failed to raise a genuine issue of material fact concerning whether the slayer statute disqualified Nancy as the

---

3. The full text of § 13–3623(A) is reproduced here for purposes of accuracy:

 A. Under circumstances likely to produce death or serious physical injury, any person who causes a child or vulnerable adult to suffer physical injury or, having the care or custody of a child or vulnerable adult, who causes or permits the person or health of the child or vulnerable adult to be injured or who causes or permits a child or vulnerable adult to be placed in a situation where the person or health of the child or vulnerable adult is endangered is guilty of an offense as follows:

 1. If done intentionally or knowingly, the offense is a class 2 felony and if the victim is under fifteen years of age it is punishable pursuant to § 13–604.01.
 2. If done recklessly, the offense is a class 3 felony.
 3. If done with criminal negligence, the offense is a class 4 felony.

 Section 13–3623(A) was formerly numbered § 13–3623(B). *See* 2000 Ariz.Sess.Laws, ch. 50, § 4.

statutory beneficiary. As a result, summary judgment against her was appropriate.

¶ 14 Moreover, even if the slayer statute had disqualified Nancy from recovering wrongful death damages, Theresa still could not have brought the action to recover on behalf of the estate. Our supreme court has previously considered whether a decedent's estate could recover wrongful death damages "[w]hen either or both parents survive but are ineligible beneficiaries." *Bowslaugh*, 126 Ariz. at 518, 617 P.2d at 26. In *Bowslaugh*, the surviving mother brought a wrongful death action against the surviving father for negligently starting a fire that killed two of their daughters. The supreme court agreed with the trial court that the doctrine of interspousal immunity prevented the mother from recovering damages from the father. And, in upholding the trial court's refusal to allow an amendment to recover on behalf of the children's estates, our supreme court strictly construed the language in § 12–612(A) to mean that regardless of the named beneficiaries' legal inability to recover damages, a decedent's estate may not recover wrongful death damages unless there is no surviving spouse, child, or parent. *Id.* at 519, 617 P.2d at 27.

¶ 15 Theresa contends that because our supreme court subsequently abolished interspousal immunity, *Fernandez v. Romo*, 132 Ariz. 447, 452, 646 P.2d 878, 883 (1982), the authority of *Bowslaugh* has been eroded. She essentially argues that had our supreme court decided *Bowslaugh* after *Romo*, it would not have addressed whether surviving but ineligible beneficiaries barred a wrongful death recovery by the decedent's estate. Theresa may be correct, but that does not change the fact that when the court decided *Bowslaugh*, interspousal immunity applied, and the court, therefore, properly addressed the issue of surviving but ineligible beneficiaries. Furthermore, the supreme court did not limit its construction of § 12–612(A) to cases involving interspousal immunity. *Bowslaugh*. And the portion of § 12–612(A) designating beneficiaries, which the supreme court construed in *Bowslaugh*, has not changed since that decision.

¶ 16 Theresa also argues that our supreme court strictly interpreted § 12–612(A) because it determined "[a] cause of action for wrongful death is purely statutory in origin and we must adhere to the plain language of the statute, leaving any deficiencies or inequities to be corrected by the legislature." *Bowslaugh*, 126 Ariz. at 519, 617 P.2d at 27. And, her argument continues, because our supreme court has since recognized that wrongful death actions have common law attributes, *see Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985), a strict interpretation of § 12–612(A) is no longer necessary.

¶ 17 But the supreme court in *Summerfield* recognized that the legislature had fully occupied the field of identifying wrongful death beneficiaries. 144 Ariz. at 472, 698 P.2d at 717. And it specifically stated it had not "retreated" from *Bowslaugh's* holding that specific legislative intent may control. *Summerfield*, 144 Ariz. at 473–74, 698 P.2d at 718–19. The language of § 12–612(A) has not changed in such a way that the statute is no longer a "legislative enactment clear on its face." *Bowslaugh*, 126 Ariz. at 519, 617 P.2d at 27. We cannot deviate from controlling supreme court decisions. *City of Phoenix v. Leroy's Liquors, Inc.*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993). Although Nancy may not have been a desirable beneficiary for practical purposes, she survived Sky and was legally a proper wrongful death beneficiary under § 12–612(A). Sky's estate, therefore, was not a proper beneficiary. *Bowslaugh*.

¶ 18 Summary judgment in favor of CPS is affirmed.

ESPINOSA, C.J. and DRUKE, J., concur.