44 P.3d 161

The STATE of Arizona, Appellee,

v.

Thomas W. HUSKIE, Appellant.

No. 2 CA–CV 2001–0057.

Court of Appeals of Arizona.
Division 2, Department A.

April 18, 2002.

Barbara LaWall, Pima County Attorney, By Lesley M. Lukach, Tucson, for Appellee.

Law Office of David J. Polan, By David J. Polan, Tucson, for Appellant.

## OPINION

PELANDER, J.

¶ 1 At the request of appellee the State of Arizona, the trial court entered a written money judgment for child support arrearages in favor of Christina Davis [1] and against appellant Thomas Huskie. Huskie appeals, contending the request for judgment was statutorily time-barred because it was filed more than three years after his and Davis's only child had been emancipated. We agree and vacate the judgment.

## BACKGROUND

¶ 2 The underlying facts are undisputed. In December 1982, the trial court dissolved the marriage of Davis and Huskie. Under the dissolution decree, Davis retained custody of the couple's only child, Jessica, and Huskie was ordered to pay $325 per month in child support until Jessica's emancipation. In March 1997, Jessica turned eighteen years of age. On May 21, 1997, she graduated from high school. Between December 1982 and May 1997, Huskie amassed child support arrearages exceeding $32,000.

¶ 3 On May 26, 2000, the state filed a request for a judgment in the amount of Huskie's arrearages plus interest. Huskie moved to dismiss the request because it had not been filed within three years of Jessica's emancipation. The trial court denied that motion and entered judgment against Huskie for the arrearages plus interest in the amount of $67,604.50. This appeal followed.

## DISCUSSION

¶ 4 Huskie contends that under A.R.S. § 25–503(I) and (J), any request for a written money judgment had to be made within three years of the date of Jessica's emancipation. He further asserts that under A.R.S. §§ 25–320(C), 25–501(A) and 25–503(M)(5), Jessica was emancipated on the date she graduated from high school and, therefore, the state's request for judgment, filed three years and five days later, was untimely. Relying on the same statutes, the state responds that Jessica's emancipation did not occur until Huskie's support obligation terminated and because he owed support for the entire month of May 1997, that obligation did not terminate until May 31. Adopting the state's arguments, the trial court ruled that Huskie's "obligation of support continued for Jessica ... through the month of May 1997," and "the three year

1. The state appeared in this action pursuant to A.R.S. § 25–509 and filed a brief in support of the judgment. Davis did not file a brief.

period in which to bring a request for a judgment included the month of May 2000." We review that ruling de novo because it presents issues of statutory interpretation. *Norgord v. State ex rel. Berning,* 201 Ariz. 228, ¶ 4, 33 P.3d 1166, ¶ 4 (App.2001). *See also Hobson v. Mid–Century Ins. Co.,* 199 Ariz. 525, ¶ 6, 19 P.3d 1241, ¶ 6 (App.2001) (when underlying facts are not disputed "we determine de novo whether the trial court[ ] correctly interpreted and applied the relevant substantive law").

■ ¶ 5 When construing statutes, our foremost goal is to effectuate the legislature's intent. *Norgord,* 201 Ariz. 228, ¶ 7, 33 P.3d 1166, ¶ 7. To do so, we first consider the statute's language. *Id.* If the language is clear and unambiguous, we look no further. *Hayes v. Continental Ins. Co.,* 178 Ariz. 264, 268, 872 P.2d 668, 672 (1994). But if the statutory language is ambiguous, we consider other factors, including "the statute's context, subject matter, historical background, effects, consequences, spirit, and purpose." *Hobson,* 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8.

¶ 6 Under § 25–503(I), the right to receive child support payments vests as each payment becomes due, and that vested right is "enforceable as a final judgment by operation of law." But, "[u]nless it is reduced to a written money judgment, an unpaid child support judgment that became a judgment by operation of law expires three years after the emancipation of the last remaining unemancipated child who was included in the court order." [2] *Id.* Likewise, under § 25–503(J), "[t]he department or its agent or a party entitled to receive support may file a request for judgment for support arrearages not later than three years after the emancipation of all of the children who were the subject of the court order." Thus, under both subsections (I) and (J) of § 25–503, the date of emancipation of the last unemancipated child triggers the three-year limitation period. *See In re Marriage of Murren,* 191 Ariz. 335, ¶¶ 14–15, 955 P.2d 973, ¶¶ 14–15 (App.1998).

¶ 7 Emancipation occurs, inter alia, "[o]n the child's eighteenth birthday" or "[o]n the

termination of the support obligation if support is extended beyond the age of majority pursuant to § 25–501, subsection A or § 25–320, subsections B and C." § 25–503(M)(2) and (5). *See also Ruhsam v. Ruhsam,* 110 Ariz. 326, 328, 518 P.2d 576, 578 (1974) (age of majority is eighteen), *modified on other grounds,* 110 Ariz. 426, 520 P.2d 298. Section 25–320(C), provides in pertinent part: "If a child reaches the age of majority while the child is attending high school or a certified high school equivalency program, support shall continue to be provided during the period in which the child is actually attending high school or the equivalency program ...." In virtually identical language, § 25–501(A) states: "If a child reaches the age of majority while the child is attending high school or a certified high school equivalency program, support shall continue to be provided while the child is actually attending high school or the equivalency program."

■ ¶ 8 In our view, the language of §§ 25–320(C) and 25–501(A) is clear. Under those statutes, the obligation to provide post-majority child support continues only "while the child is actually attending high school." § 25–501(A). *See also* § 25–320(C). Thus, when a post-majority child stops attending high school, the support obligation terminates and the child is emancipated. § 25–503(M)(5). *See also Guzman v. Guzman,* 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App. 1993) ("What a statute necessarily implies is as much a part of the statute as what the statute specifically expresses."). As noted above, the date of emancipation triggers the three-year limitation period. § 25–503(I) and (J).

■ ¶ 9 We reject the state's argument and the trial court's ruling that, because Huskie owed $325 for the month of May 1997, the support obligation did not terminate until May 31. That position is contrary to the clear language of §§ 25–320(C) and 25–501(A), which limit post-majority child support to "the period in which the child is actually attending high school." § 25–320(C). To reach the conclusion advanced by

---

2. A request for a written judgment filed within three years of the date of emancipation is sufficient to preserve the right to such a judgment. A.R.S. § 25–503(I).

the state, we would have to re-write those statutes to provide that post-majority support "shall continue throughout the last month in which the child has attended high school." "The addition of such a phrase, however benevolent the intent, would be an infringement upon the province of the legislature." *Bowslaugh v. Bowslaugh,* 126 Ariz. 517, 519, 617 P.2d 25, 27 (1979).

¶ 10 As the state correctly notes, we must construe these statutes liberally. *See* A.R.S. § 1–211(B) ("Statutes shall be liberally construed to effect their objects and to promote justice."); § 25–503(J) ("If emancipation is disputed, this subsection shall be liberally construed to effect its intention of diminishing the limitation on the collection of child support arrearages."). *See also Murren.* But we are not permitted to re-write them. *Bowslaugh,* 126 Ariz. at 519, 617 P.2d at 27, *quoting Padilla v. Industrial Comm'n,* 113 Ariz. 104, 106, 546 P.2d 1135, 1137 (1976) (noting that " 'courts will not enlarge the meaning of simple English words in order to make them conform to their own peculiar sociological and economic views' " or to avoid " 'harsh and uncompassionate' " results).

¶ 11 For this same reason, the state's argument that § 25–503(I) and (J) are not traditional statutes of limitations also fails. Although the purposes of those subsections may be somewhat different than classic statutes of limitations, we may not judicially alter the clear wording of those statutes to avoid their force and effect. Similarly, that the legislature has eased the restrictions on collection of child support arrearages does not mean that we may further do so by judicial fiat. *Bowslaugh.*

¶ 12 Finally, contrary to the state's suggestion, that "Jessica continued to live with [Davis] and be supported by her ... for a period after her graduation from high school" does not change the result. That a child remains in the parental home does not forestall emancipation. *Guzman,* 175 Ariz. at 188, 854 P.2d at 1174.

¶ 13 Under §§ 25–320(C), 25–501(A), and 25–503(M), Jessica became emancipated when she graduated from high school on May 21, 1997. Under § 25–503(I) and (J), a re-quest for a written money judgment had to be made within three years of that date. The state's request, filed on May 26, 2000, was untimely. Accordingly, the trial court's judgment in favor of Davis is vacated.

BRAMMER, Jr., P.J. and FLÓREZ, J., concurring.